UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOEL CARTER,

    Plaintiff,                            Hon. Janet T. Neff

v.                                                      Case No. 1:14 CV 1099

ANDREW HICKOK, et al.,

    Defendants.
_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on <u>Defendants' Motion to Dismiss</u>. (Dkt. #13). Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendants' motion be **denied**.

## BACKGROUND

Plaintiff initiated the present action on October 24, 2014, against three prison officials: (1) Andrew Hickok; (2) Mark Brand; and (3) Matthew Bennickson. (Dkt. #1). The following allegations are contained in Plaintiff's complaint.

On or about October 4, 2013, Plaintiff was transferred to a new housing unit. After arriving in his new cell, Plaintiff was approached by Defendant Hickok who handed Plaintiff a "cell inventory check list." Plaintiff was instructed to "fill out the form" and make note of any cell furnishings that were destroyed or in need of repair. Plaintiff immediately observed this his mattress "had a hole in it and that strings and plastic was coming off of the mattress." Plaintiff asked for a new mattress, but

was instructed by Hickok to "just mark 'D' for destroyed on the cell inventory sheet." Plaintiff did as he was instructed and Hickok "verified. . .and signed the form."

On October 28, 2013, Defendant Hickok informed Plaintiff that he was "going on mattress restriction for destroying state property, and since you destroyed your mattress you have to suffer." When Plaintiff "reminded Hickok of the cell inventory form he filled out. . .Hickok stated, 'the cell inventory form does not even matter.'" Plaintiff's further attempts to explain to Hickok that he did not destroy his mattress were met with laughter. Plaintiff then informed Hickok that he suffers from multiple sclerosis and that sleeping on a mattress-less steel bed frame would exacerbate his condition. When Plaintiff encouraged Hickok to contact Health Care to verify his medical condition, Hickok refused and "again started laughing."

Plaintiff subsequently asked Defendant Bennickson if he approved Defendant Hickok's decision to impose a mattress restriction. Bennickson responded that he approved Hickok's actions and further stated "that's what happens when you destroy property." Plaintiff responded that he did not destroy his mattress. Plaintiff "asked Bennickson to review the 'Cell Inventory Sheet' that Hickok signed," but Bennickson "refused to do so." Plaintiff also informed Bennickson that he suffered from multiple sclerosis and that sleeping on a mattress-less bed frame would aggravate his medical condition, but this knowledge did not prompt Defendant Bennickson to alter his course of action.

Defendant Brand later presented Plaintiff with the misconduct report charging him with destroying state property. Plaintiff reiterated that a review of the cell inventory checklist would demonstrate that he did not destroy his mattress. Plaintiff also informed Brand that he suffered from multiple sclerosis and that sleeping on a mattress-less bed frame would cause him to experience

"unnecessary pain for something he did not do." Brand responded, "please, please - save it for the hearing."

Plaintiff's mattress was confiscated and Plaintiff was forced to sleep on a "steel bed." This experience exacerbated Plaintiff's multiple sclerosis and caused Plaintiff to experience "unnecessary pain and suffering, including pain in his hips, back, and thighs; anxiety, depression, humiliation and discomfort, and; sleep deprivation." Four days later, Defendant Hickok returned to Plaintiff the very same damaged mattress that he previously accused him of destroying.

Plaintiff alleges that Defendants violated his Eighth Amendment right to be free from cruel and unusual punishment. Plaintiff also asserts several state law causes of action. Plaintiff seeks monetary and declaratory relief. Defendants now move to dismiss Plaintiff's claims on the ground that they are entitled to qualified immunity.

## ANALYSIS

The doctrine of qualified immunity recognizes that government officials must be able to carry out their duties without fear of harassing litigation. *See Davis v. Scherer*, 468 U.S. 183, 195 (1984). As is well recognized, they can do so only if they reasonably can anticipate when their conduct may give rise to liability for damages, and if unjustified lawsuits are quickly terminated. *Id.* Generally, when government officials perform discretionary functions, they are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also, Behrens v. Pelletier*, 516 U.S. 299, 301 (1996). The question whether a defendant enjoys

qualified immunity is a question of law for the Court to resolve. *See Virgili v. Gilbert*, 272 F.3d 391, 392 (6th Cir. 2001).

When evaluating claims of qualified immunity, the Court employs a two-step analysis. The Court first determines "whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). If such fail to establish a violation of the plaintiff's constitutional rights, the defendant is entitled to immunity. *See Callahan*, 555 U.S. at 232. On the other hand, if the facts establish a violation of the plaintiff's constitutional rights, the Court must then determine whether the right in question was "clearly established" at the time the defendant acted. The defendant is entitled to qualified immunity unless his "conduct violated a clearly established constitutional right." *Id.* The inquiry whether a particular right was clearly established "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Moldowan v. City of Warren*, 578 F.3d 351, 375 (6th Cir. 2009) (citing *Saucier*, 533 U.S. at 201). The contours of the right in question "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Fisher v. Harden*, 398 F.3d 837, 845 (6th Cir. 2005) (quoting *Saucier*, 533 U.S. at 202). The focus of this inquiry is "on whether the officer had fair notice that her conduct was unlawful." *Lyons v. City of Xenia*, 417 F.3d 565, 579 (6th Cir. 2005).

When a defendant asserts qualified immunity, the plaintiff bears the burden to demonstrate: (1) he suffered a violation of a constitutional right, and (2) that the right in question was clearly established at the time of the defendant's alleged misconduct. *See Benison v. Ross*, 765 F.3d 649, 664 (6th Cir. 2014).

Defendants assert that they are entitled to relief because their alleged conduct did not violate a "clearly established constitutional right." Specifically, Defendants assert that qualified immunity is appropriate because there does not exist relevant authority clearly establishing that it violates the Eighth Amendment to deprive a prisoner, suffering from Multiple Sclerosis, of a mattress for four days. While Defendants are correct that "whether a right has been clearly established should not be determined at 'a high level of generality,'" the Court need not locate "a case directly on point" to justify denying a motion for qualified immunity. *Gradisher v. City of Akron*, - - - F.3d - - -, 2015 WL 4503208 at *6 (6th Cir., July 24, 2015) (quoting *Ashcroft v. al-Kidd*, 131 S.Ct. 2074, 2083 (2011)). Where existing precedent "ha[s] placed the statutory or constitutional question beyond debate. . .officials can still be on notice their conduct violates established law even in novel factual circumstances." *Gradisher*, 2015 WL 4503208 at *6 (quoting *al-Kidd*, 131 S.Ct. at 2083 and *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)).

The Court recognizes the existence of authority which stands for the general proposition that, at least under certain circumstances, depriving a prisoner of a mattress for a limited period of time does not offend the Constitution. *See, e.g., Stephens v. Cottey*, 145 Fed. Appx. 179, 180 (7th Cir., Aug. 17, 2005) ("[s]leeping for three days on a bedframe without a mattress is not extreme. . .and neither is sleeping for five days on a mattress without a bedframe"). While this authority is certainly not irrelevant, such neither holds nor supports the proposition that depriving a prisoner of a mattress, regardless of the specific circumstances and consequences, can never violate the Constitution. As is generally the case, each circumstance must be evaluated on its own merits.

While there may not exist authority directly addressing the deprivation of a mattress from a prisoner suffering from multiple sclerosis, the Court concludes that in light of the following statement of Eighth Amendment law by the *Hope* Court, such is not necessary:

> "'[T]he unnecessary and wanton infliction of pain ... constitutes cruel and unusual punishment forbidden by the Eighth Amendment.'" *Whitley v. Albers,* 475 U.S. 312, 319, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986) (some internal quotation marks omitted). We have said that "[a]mong 'unnecessary and wanton' inflictions of pain are those that are 'totally without penological justification.'" *Rhodes v. Chapman,* 452 U.S. 337, 346, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981). In making this determination in the context of prison conditions, we must ascertain whether the officials involved acted with "deliberate indifference" to the inmates' health or safety. *Hudson v. McMillian,* 503 U.S. 1, 8, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992). We may infer the existence of this subjective state of mind from the fact that the risk of harm is obvious. *Farmer v. Brennan,* 511 U.S. 825, 842, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).

*Hope*, 536 U.S. at 738.

Plaintiff alleges that Defendants removed his mattress, forcing him to sleep on a bare steel bed frame, without penological justification and despite his statements that such would exacerbate his serious medical condition and cause him to unnecessarily experience severe pain. Plaintiff further alleges that he did, in fact, experience physical and emotional harm as a direct result of Defendants' conduct. As the *Hope* Court makes abundantly clear, it is beyond debate that this is precisely the sort of behavior that is prohibited by the Eighth Amendment.[1] While evidence may ultimately reveal that the relevant circumstances are not as Plaintiff alleges, at this juncture the Court is bound by Plaintiff's

---

[1] The Court further notes that one of the cases cited by Defendants supports the conclusion that depriving an inmate of a mattress does, in fact, violate the Constitution where such results in "serious harm." *See Grissom v. Davis*, 55 Fed. Appx. 756 (6th Cir., Feb. 12, 2003) (court rejected prisoner's deprivation of mattress claim because the prisoner did not allege that such "deprived her of basic human needs or caused her to suffer serious harm"). Plaintiff's allegations that Defendants' actions exacerbated his multiple sclerosis and caused him to experience pain and sleep deprivation, among other things, constitutes "serious harm."

allegations and such must be interpreted in his favor. So interpreted, the Court concludes that Defendants are not entitled to qualified immunity.

## CONCLUSION

For the reasons articulated herein, the undersigned recommends that Defendants' Motion to Dismiss, (Dkt. #13), be **denied**.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

Respectfully submitted,


Date: August 17, 2015 /s/ Ellen S. Carmody
ELLEN S. CARMODY
United States Magistrate Judge